## INSURANCE CO. OF NORTH AMERICA v. IRBY, ALEXANDER & IRBY. (No. 2925.)

(Court of Civil Appeals of Texas. Texarkana. May 16, 1924. Rehearing Denied June 5, 1924.)

**1. Carriers ⚖⊐51—"Bill of lading" is a receipt and contract of shipment.**

"Bills of lading" issued pursuant to statute serve as receipts for goods delivered and contract of shipment, and must contain a description of the goods.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Lading.]

**2. Carriers ⚖⊐51—Bill of lading is prima facie evidence of kind and quantity of goods.**

As between the parties and their privies, the bill of lading is prima facie evidence of kind and quantity of goods actually delivered to the carrier.

**3. Evidence ⚖⊐596(3)—Evidence held insufficient to impeach bill of lading.**

In an action by an insurance company to recover an overpayment of insurance to shipper on cotton burned in transit, evidence that some bills of lading are incorrect, and that defendants were short some bales at the end of the season, held not to overcome prima facie case established by bill of lading as to number of bales shipped.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Suit by the Insurance Company of North America against Irby, Alexander & Irby. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Thompson, Knight, Baker & Harris, and Pinkney Grissom, all of Dallas, for appellant.

Clark & Sweeton, of Greenville, for appellee.

HODGES, J. The appellant brought this suit to recover the sum of $924.58 which it claims was an overpayment of a loss on cotton destroyed by fire. The appeal is from a judgment rendered for the defendant below in a trial before the court without a jury.

There appears to be little, if any, conflict in the evidence as to the material facts. In December, 1919, the appellees were the owners of a lot of cotton being shipped from Grand Saline, Tex., to Greenville, Tex. While in the custody of the Missouri, Kansas & Texas Railway Company at Alba, an intermediate station, a portion of the cotton was destroyed by fire. Much of that destroyed and damaged was covered by insurance policies issued by the appellant. About the 1st of January following, the appellees were notified of the fire by the agents of the railway company, and requested to present their claims for loss. It appeared from the information thus given that 43 bales had been burned. Appellees then notified the appellant, who sent E. M. Hafer, its agent, to ascertain and adjust the loss. All the files and papers of the appellees relating to the cotton were delivered to Hafer, who, after an investigation, made a settlement by paying the appellees the sum of $6,023.80. Hafer conducted the investigation in his own way and without any assistance from the appellees except as above stated. The sum paid represented what he then considered the correct amount of the loss resulting from the fire, and about which there was at that time no dispute. Upon payment of the loss, the appellant took an assignment of the appellees' claim for damages against the railway company. In the negotiations for a settlement with the railway company which followed, the latter refused to pay the full amount of the claim, upon the ground that the records showed that four bales of the cotton reported and paid for as destroyed were actually delivered to the appellees some time after the fire.

In the notice sent to the appellees by the railway company the cotton is described as covered by "T. S. L. Nos. 138, 139, 141, 142 and 155." The following statement of their claim was made out by Hafer and signed by the appellees about the time, or just before,

they received payment of loss from the appellant:

"Missouri, Kansas & Texas Railroad of Texas Joe Marshall, Freight Claim Agent, Dallas, Texas, to Irby, Alexander & Irby, Greenville, Texas, Dr.

"December 31st, 1919.

"To cotton burned at Alba, Texas, Hocking Valley car #32781:

| | | | | |
|---|---|---|---|---|
| Bill lading #141, 3,095 lbs. @ 41.95¢ | | | | $1,298 35 |
| Bill lading #142, 4,083 lbs. @ 41.95 | | | | 1,712 82 |
| Bill lading #155, 7,267 lbs. @ 41.00 | | | | 2,979 47 |
| Unearned freight on 14,445 lbs. @ 35¢ per 100 | | | | 29 86 |
| Reconditioning 12 bales received at Greenville compress, Greenville, Texas, @ $2.00 per bale | | | | 24 00 |
| Total of claim | | | | $6,023 80 |

"I hereby certify that the above is a true statement of the loss as ascertained by us.
"[Signed]      J. C. Alexander.

"Statement of Claim.

| | | | B/C | | | B/C | | |
|---|---|---|---|---|---|---|---|---|
| B/L 141 | 12—8—1919 | 10 | B/C | 5210# | 4 | B/C | 2115 | 3095 |
| B/L 142 | 12—8—1919 | 15 | " | 7807# | 7 | " | 3724 | 4083 |
| B/L 155 | 12-17—1919 | 48 | " | 25577# | 35 | " | 18310 | 7267 |
| Total | | 73 | | 38594 | 46 | | 24149 | 14445 |

"Freight Charges.

| | | | |
|---|---|---|---|
| Billed | 19,600 | $ 68 60 | |
| | 2,240 | 7 84 | |
| | 2,240 | 7 84 | |
| | 2,800 | 9 80 | |
| | 5,600 | 19 60 | |
| | 32,480 | $113 60 | |
| S. B. | 24,149 @ 35¢ | 64 52 | |
| C. C. | 18,331 | $ 29 16 | O. C. |

"Claim.

| | | | | |
|---|---|---|---|---|
| B/L 141 | 3095 lbs. cotton | 41.95¢ | $1,298 35 | |
| B/L 142 | 4083 " " | 41.95 | 1,712 82 | |
| B/L 155 | 7267 " " | 41.00 | 2,979 47 | |
| | | | $5,970 64 | |
| Freight overcharge | | | 29 16 | |
| Reconditioning 12 bales @ $2.00 each | | | 24 00 | |
| | | | $6,023 80" | |

That statement seems to have formed the basis of the settlement of the insurance liability made by Hafer. The loss paid for is described under the subhead "Claim," while the cotton destroyed is described in pounds as covered by "B/L 141, B/L 142, B/L 155." The mistake relied on for a recovery in this suit was in settling for that portion of the cotton described as shipped under "B/L 142." That original bill of lading was introduced in evidence. It shows that 15 bales of cotton were shipped from Grand Saline by Weeks & Maupin, consigned to their order at Greenville, with instructions to notify Irby, Alexander & Irby. The proof shows that the appellant paid the appellees for a loss of 8 bales described as having been shipped under that bill of lading. Receipts, whose accuracy is not questioned, show that the appellees actually received 11 bales of cotton consigned under bill of lading No. 142.

If the bill of lading correctly stated the number of bales of cotton in that shipment, the appellant has overpaid in the sum here sued for, unless other bills of lading under which some of the cotton destroyed was shipped were incorrect. Over the objection of appellant, the court permitted the appellees to prove by the railway agent that bills of lading were not always correct; that at times more cotton was included in a shipment than was described in the bill of lading, and at other times less cotton was sent than was stated in the bill of lading. The court also permitted the appellees to prove by a member of the firm that at the end of the season they were short 11 or 12 bales, exclusive of the amount burned on that occasion. In his findings of fact the court based his conclusion that there had been no overpayment upon this testimony and upon the further fact that appellant's agent, Hafer, had paid the loss after having an opportunity to make a thorough investigation and ascertain the correct amount of the loss.

[1-3] Unless some error existed in the bills of lading which evidenced the amount of cotton in the custody of the railroad at the time the fire occurred, the appellant has overpaid the loss to the extent of the amount claimed. Our statute requires railroad companies to issue bills of lading when goods are tendered for shipment. The bill of lading serves the purpose of a receipt for the goods delivered, and also constitutes the contract of shipment. It must contain a description of the goods. As between the parties and their privies, the bill of lading is prima facie evidence of the kind and quantity of the goods actually delivered to the carrier. If in this instance no other cotton had been shipped under other bills of lading at the same time, there would be little reason to question the accuracy of bill of lading No. 142 in describing the number of bales included in that shipment. The record contains no evidence tending to show that any of the other bills of lading were incorrect. In the absence of evidence sufficient to impeach the correctness of bill of lading No. 142, it was the duty of the trial court to render a judgment in favor of the appellant for the amount sued for.

The question here is: Were the impeaching circumstances sufficient? Proof that some railway bills of lading are incorrect is not sufficient to justify a finding that a particular bill of lading is not correct. Proof that the appellees were short at the end of the season in balancing their business is no evidence of the number of bales of cotton lost in that fire. We are therefore of the opinion that the prima facie case made out by the appellant was not overcome by the facts relied on by the court as the basis of his legal conclusion. However, the case may be strengthened upon further inquiry into the facts.

The judgment will therefore be reversed, and the cause remanded for another trial.